**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Russell DeFreitas, and on behalf of same similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>Suffolk County Sheriff Errol D. Toulon, *et al.*,<br><br>Defendants. | 2:23-cv-5933<br>(NJC) (AYS) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is an Amended Complaint, two motions seeking leave to proceed *in forma pauperis* ("IFP"), a motion seeking leave to amend the Amended Complaint, and two motions seeking the entry of a temporary restraining order and/or preliminary injunction filed by Russell DeFreitas ("DeFreitas" or "Plaintiff"), acting *pro se*,[1] while incarcerated as a pretrial detainee at the Suffolk County Correctional Facility. (Am. Compl., ECF No. 7; IFP Mot., ECF Nos. 2, 8; Mot. to Amend, ECF No. 9; TRO/PI Mot., ECF Nos. 12, 16.) DeFreitas challenges an underlying, pending state court prosecution and seeks, among other relief, the dismissal of the criminal charges against him. (Am. Compl. at 27, 54.)

On October 12, 2023, this case was reassigned to this Court's docket. (Elec. Order, Oct. 12, 2023.) Upon review of DeFreitas's submissions, the Court grants the applications to proceed IFP, grants the motion to amend the Amended Complaint, and dismisses the Amended Complaint as set forth below pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). Given the

---

[1]  Although DeFreitas styles his Amended Complaint as brought on behalf of himself and others similarly situated, DeFreitas may represent only himself. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause."); 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct *their own cases personally* or by counsel . . . .") (emphasis added).

dismissal of the Amended Complaint, the remaining motions (ECF Nos. 12, 16) are denied as moot.

## BACKGROUND

DeFreitas commenced this action on July 24, 2023 by filing a twenty-two page Complaint against twenty-eight Defendants together with an application to proceed IFP. (Compl., ECF No. 1; IFP Mot., ECF No. 2.) On August 2, 2023, DeFreitas filed a twenty-seven page Amended Complaint against thirty-three Defendants with an additional thirty-two pages of exhibits and a second motion for leave to proceed IFP. (Am. Compl., ECF No. 7; IFP Mot., ECF No. 8.) On August 21, 2023, DeFreitas filed a letter motion seeking to amend his Amended Complaint to identify the Defendant previously named as "Suffolk County Supreme Court Judge" as "Supreme Court Judge Anthony Sinft [sic]." (Mot. to Amend, ECF No. 9.)

### I.      The Amended Complaint

DeFreitas submitted the Amended Complaint on the Court's form for civil rights complaints brought pursuant to 42 U.S.C. § 1983 ("Section 1983") and names the following thirty-three Defendants: Suffolk County Sheriff Errol D. Toulon ("Sheriff Toulon"); Suffolk County Correctional Facility Warden ("Warden")[2]; Suffolk County District Attorney Raymond A. Tierney ("DA Tierney"); Suffolk County Assistant District Attorney Jake Kubitz ("ADA Kubitz"); Suffolk County Assistant District Attorney Raquel Tisi ("ADA Tisi"); Roger B. Rothman, Esq. ("Rothman"); Ian T. Fitzgerald, Esq. ("Fitzgerald"); the Suffolk County District Attorney's Office ("SCDAO"); the Suffolk County Sherriff's [sic] Office ("SCSO"); Suffolk County Executive Steve Bellone ("County Exec. Bellone"); an unnamed "Suffolk County

---

[2] The Warden is identified in DeFreitas's November 6, 2023 TRO Motion as Michael Franchi. (*See* ECF No. 12 at 2.)

District Court Arraignment Judge"; Suffolk County Supreme Court Judge Sinft ("Judge Senft")[3]; Suffolk County; the State of New York ("NYS"); Governor Kathlene [sic] Hochul ("Gov. Hochul"); Suffolk County Police Officer Anthony Siviglia, P.I.D. # 60013 ("P.O. Siviglia"); Suffolk County Police Officer Todd Cracco, P.I.D. # 60533 ("P.O. Cracco"); Suffolk County Police Officer Arthur Scalzo, P.I.D. # 60922 ("P.O. Scalzo"); Suffolk County Police Officer Thomas McLaughlin, P.I.D. # 60341 ("P.O. McLaughlin"); Suffolk County Police Officer Charles Gambina, P.I.D. # 40188 ("P.O. Gambino"); Suffolk County Police Officer Charles Roe, P.I.D. #34492 ("P.O. Roe"); the Suffolk County Police Department ("SCPD"); New York State Police Officer Robert Lynch ("P.O. Lynch"); the New York State Police Department ("NYSPD"); Suffolk County Police Officer Thomas Bosco, P.I.D. # 33705 ("P.O. Bosco"); the State of New York Citizen's Policy and Complaint Review Council ("NYCPCRC"); the State of New York Grievance Committee for the Tenth Judicial District ("NY Grievance Committee"), its District Chair Dorian Glover, Esq. ("Glover"), its Chief Attorney Catherine A. Sheridan ("Sheridan"), its Staff Counsel Ann Marie Modica-Schaffer ("Modica-Schaffer"), its Staff Counsel Christopher R. Shannon ("Shannon"), and its Staff Counsel Rachel Merker ("Merker"); and Commissioner Yolanda Canty of the State of New York Commission of Correction's Citizen Policy and Complaint Review Council ("Commissioner Canty" and collectively, "Defendants"). (*See* Am. Compl. at 2–12.)

DeFreitas's claims arise from his March 11, 2023 arrest in the parking lot of the Hampton Inn in Farmingville, New York. (*See id*. at 24.) The Amended Complaint describes that police

---

[3]  Despite the misspelling, the Court understands that DeFreitas intends to name Suffolk County Supreme Court Judge Anthony Senft, Jr. Further, although DeFreitas's Motion to Amend the Amended Complaint (ECF No. 9) seeks to add Judge Senft as a Defendant, DeFreitas had already included him as a Defendant in his Amended Complaint (ECF No. 7) albeit without his first name. For the avoidance of any doubt, Judge Senft is included in this action as a Defendant.

officers handcuffed DeFreitas in front of his fiancée and took him to a holding pen where he was left handcuffed for hours and was not read Miranda warnings. (*See id.*) At the same time, police officers allegedly brought DeFreitas's fiancée to DeFreitas's home, entered the home without first showing her a warrant, and found drug paraphernalia. (*See id.*) DeFreitas challenges the procedures surrounding his arraignments on the original and superseding indictments and the legal representation provided by his court-appointed defense attorneys, Rothman and Fitzgerald, during those proceedings. (*See id.* at 13.) DeFreitas claims that he did not "consent to a waiver of [his] rights pursuant to CPL 180.10," yet those rights were waived without his knowledge. (*Id.*) DeFreitas also claims that, at the arraignment, he learned that officers had obtained a search warrant and used it to enter the hotel room that he and his fiancée were alleged to occupy and that the search yielded firearms, narcotics, and paraphernalia. (*See id.*) As a result, DeFreitas and his fiancée "were charged with these criminal offenses." (*Id.*) DeFreitas alleges that he informed Rothman that he wanted to be present at the grand jury proceedings. (*See id.*) DeFreitas further alleges that Rothman said he would "waive your 180 for a couple of weeks to give the prosecutor time to sort your case out and I'll see you at the Grand Jury." (*Id.* at 14.)

According to the Amended Complaint, DeFreitas was detained at the Suffolk County Correctional Facility ("the Jail") where, for the first two or three days, his requests for paper, a pencil, and stamped envelopes were denied. (*See id.*) DeFreitas alleges that corrections officers told him to wait until he had funds so that he could buy these items from the commissary. (*See id.* at 14.) DeFreitas claims to have received these items on March 18, 2023, at which time he wrote a letter to the Suffolk County District Attorney's Office requesting that he and his fiancée be permitted to appear at the grand jury. (*See id.*)

DeFreitas alleges that the "prosecutor's office disregarded the grand jury notice and obtained a defective and invalid indictment" and denied him of his right to appear there. (*Id.* at

4

15.) DeFreitas also alleges that he was arraigned on this defective indictment on March 27, 2023 before Judge Senft, who appointed 18B attorney Fitzgerald to represent him. (*See id.* at 16.) DeFreitas further alleges that Fitzgerald apprised Judge Senft that DeFreitas had been denied his right to testify before the grand jury and that a motion would be forthcoming. (*See id.*)

According to the Amended Complaint, Fitzgerald later informed DeFreitas that the motion was unlikely to be successful because DeFreitas's prior attorney, Rothman, had claimed that DeFreitas did not want to appear at the grand jury. (*See id.*) DeFreitas alleges that he instructed Fitzgerald to make the motion anyway and that he would get proof that he requested to appear before the grand jury by submitting a Freedom of Information Law request to the prosecutor's office. (*See id.*) DeFreitas alleges that he next spoke with Fitzgerald on May 12, 2023, and learned that the motion was not filed and that the prosecution would be seeking a superseding indictment. (*See id.* at 16–17.) DeFreitas also alleges that Fitzgerald informed him that he did not get the search warrant in discovery because it was sealed. (*See id.* at 17.) DeFreitas complains that Fitzgerald did not challenge the sealing and alleges that he again requested to testify at the grand jury. (*See id*.)

On May 18, 2023, DeFreitas testified before the grand jury and alleges that he was not informed of the charges under consideration "so [he] was unable to present competent or relevant evidence." (*Id.* at 18.) According to the Amended Complaint, DeFreitas learned during his testimony that he "was being accused of selling deadly narcotics, causing numerous overdose [sic] and being arrested with overdose victims cash app debit cards in my possession." (*Id.* at 19.) DeFreitas complains that the two deputy sheriffs who accompanied him to the grand jury were only sworn to secrecy after his first forty-five minutes of testimony had concluded, and alleges that there are "rumor[s] through out [sic] the jail that I was selling deadly narcotics causing overdoses and getting caught with the victims [sic] valuables[.]" (*Id.*)

5

According to the Amended Complaint, DeFreitas was arraigned on the superseding indictment on May 23, 2023, before Judge Senft, and only then learned that he was being charged with operating as a "major drug trafficker" involved in criminal sales of controlled substances in the first and second degree, criminal possession of a controlled substance in the third degree, and criminal possession of a firearm in the second degree. (*Id.* at 20.) DeFreitas alleges that he complained about his attorney, Fitzgerald, to Judge Senft, and that the judge allegedly "became furious telling me I'm not getting another counselor" and set bail of "5 million over 10 million with a 50 million partially secure bond." (*Id.* at 21.)

DeFreitas also complains about the timing of the discovery produced by the prosecution and alleges that his attorney, presumably Fitzgerald, did not adequately represent him. (*See id.* at 15–17, 20–22.) According to the Amended Complaint, DeFreitas last spoke with Fitzgerald on July 14, 2023. (*See id.* at 21–23.) DeFreitas alleges that he has filed a grievance against Fitzgerald and is "awaiting a response." (*Id.* at 23.)

DeFreitas also alleges that, prior to his incarceration, he was involved in a car accident that caused injuries to his neck and back. (*Id.* at 24–25.) According to the Amended Complaint, DeFreitas had physical therapy sessions four times per week prior to his arrest. (*See id.* at 24.) DeFreitas alleges that he has been complaining about back and neck pain and stiffness for months and was treated with a "pill medication" that caused him severe stomach pain and induced vomiting for the three days he was taking it. (*Id.* at 24–25.) DeFreitas describes that he was seen by a doctor who prescribed him a cream to use twice per day, which worked on the pain "for a little while," but did not help the stiffness in his neck. (*Id.* at 25.) DeFreitas was seen again by a doctor who prescribed a different pill for twenty-one days. (*See id.*) DeFreitas alleges that he has been taking the pill for about a week or two, which has helped to alleviate the pain in his back better than the cream. (*See id.*) However, DeFreitas complains that the pills do "nothing

6

for my neck" and that he is "still complaining to medical" and filed a grievance on July 21, 2023. (*Id.*)

Further, DeFreitas alleges that "years ago the foot doctor in this facility diagnosed that the jail issued sneakers are not for my feet but there was nothing he could do." (*Id.*) Presently, DeFreitas claims to have developed a bunion on his left foot allegedly due to the narrow footwear provided by the jail. (*See id.* at 26.) DeFreitas alleges that he was administered a cortisone shot but claims that his foot still hurts. (*See id.*) DeFreitas describes that he wears slippers instead of sneakers, but then is restricted to his housing unit where slippers may be worn. (*See id.*) According to the Amended Complaint, a doctor told DeFreitas that they "don't operate on buyons [sic] here, I have to wait until I go home or upstate." (*Id.*) DeFreitas then filed a grievance on July 21, 2023, and the present Amended Complaint on August 2, 2023. (*See id.*)

Based on the foregoing allegations, DeFreitas seeks the "dismissal of all criminal charges" against him as well as a damages award in the total sum of $3.3 million. (*Id.* at 27–28.)

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure by which the district court first considers whether a plaintiff qualifies for IFP status, and then considers the merits of the complaint under 28 U.S.C. § 1915. *See Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (*per curiam*) ("If the plaintiff demonstrates poverty, he should be permitted to file his complaint *in forma pauperis*. Then the court may properly consider dismissing the complaint as frivolous.").

### I.    *In Forma Pauperis*

Upon review of DeFreitas's IFP applications (IFP Apps., ECF Nos. 2, 8), the Court finds that DeFreitas is qualified by his financial status to commence this action without the prepayment

of the filing fee. Therefore, the applications to proceed IFP are granted.

## II.    Sufficiency of the Pleadings

Judge Bianco has accurately summarized the standard of review for IFP *pro se*

complaints as follows:

> Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis*
> complaint if the action is frivolous or malicious, fails to state a claim on which
> relief may be granted, or seeks monetary relief against a defendant who is
> immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i-iii). The Court is
> required to dismiss the action as soon as it makes such a determination. *See id*.
> Courts are obliged to construe the pleadings of a *pro se* plaintiff liberally. *Sealed
> Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); *McEachin v.
> McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). Moreover, at the pleadings stage of
> the proceeding, the Court must assume the truth of "all well-pleaded,
> nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch
> Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd* --- U.S. ----, 133 S.Ct.
> 1659, 185 L.Ed.2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80,
> 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)).
>
> However, a complaint must plead sufficient facts to "state a claim to relief that is
> plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679, 129
> S.Ct. 1937 (citations omitted). If a liberal reading of the complaint "gives any
> indication that a valid claim might be stated," the Court must grant leave to
> amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).
> However, if amendment of the complaint would not cure the substantive defects
> of the claim, leave to amend should be denied. *Cuoco*, 222 F.3d at 112.

*Caldwell v. Pesce*, 83 F. Supp. 3d 472, 480 (E.D.N.Y. 2015) (spacing adjusted), *aff'd*, 639 F.

App'x 38 (2d Cir. 2016). Indeed, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*,

556 U.S. at 678 (citation omitted). While "detailed factual allegations" are not required, "[a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Rather, a

plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quotation marks omitted). In addition, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## DISCUSSION

### I.     Abstention

DeFreitas requests injunctive relief in the form of dismissal of the criminal charges pending against him in the New York State Supreme Court, Suffolk County on the basis of the following allegations: (1) that he was purportedly not properly Mirandized; (2) that the state court arraignment judge allegedly illegally waived his rights under CPL § 180.10; (3) that the district attorney purportedly failed to protect his right to testify before the grand jury; and (4) that any further prosecution would allegedly violate his right to a speedy trial.[4]  Because the requested relief would require this Court to interfere with a pending state criminal prosecution, these claims squarely trigger the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and *Sprint Communications, Inc. v. Jacobs*, 571 U.S 69 (2013). For the following reasons, this Court must dismiss these claims under *Younger* and *Sprint*.

The doctrine of *Younger* abstention requires federal courts to abstain from exercising jurisdiction over claims when adjudication of those claims would interfere with any one of three types of state-level proceedings that present "exceptional circumstances": (1) "ongoing state

---

[4] According to the information maintained by the New York State Office of Court Administration on its public site, DeFreitas pled not guilty on May 30, 2023 to a multi-count indictment under Indictment No. 71385-23/001. *See* New York State Office of Court Administration Indictment No. 71385-23/001 Page, https://perma.cc/NPE2-UN7Y (last visited on January 25, 2024).

9

criminal prosecutions"; (2) state "civil enforcement proceedings" that are "akin to criminal prosecutions"; and (3) proceedings that involve state courts "perform[ing] their judicial functions," including "enforcing the orders and judgments of its courts." *Sprint*, 571 U.S at 78 (defining the scope of *Younger* abstention). After applying this categorical approach, courts consider three additional, non-dispositive factors to determine whether *Younger* abstention is appropriate: 1) whether there is a "pending state proceeding," 2) whether that proceeding "implicates an important state interest," and 3) whether "the state proceeding affords an adequate opportunity for judicial review of . . . federal constitutional claims." *Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F. 3d 425, 427 (2d Cir. 2015) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)); *see, e.g.*, *Lowell v. Vermont Dep't of Child. & Fams.*, 835 F. App'x 637, 639 (2d Cir. 2020), *as amended* (Dec. 15, 2020) (describing the *Younger/Sprint* abstention analysis). "[E]ven if *Younger*'s prerequisites are satisfied, a federal court may exercise jurisdiction if the plaintiff can make a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Lowell*, 835 F. App'x at 639 (quoting *Younger*, 401 U.S. at 54).

Here, DeFreitas asks this Court to dismiss the state criminal charges that are currently pending against him, squarely triggering *Younger*'s first category: interference with an ongoing state criminal prosecution. *See Sprint,* 571 U.S at 72–73 ("*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."). Indeed, it has long been held that a federal court may not enjoin a pending state court criminal proceeding in the absence of "'special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate.'" *Heicklen v. Morgenthau*, 378 F. App'x 1, 2 (2d Cir. 2010) (citing *Younger*, 401 U.S. at 54, and quoting *Gibson v. Berryhill*, 411 U.S. 564,

10

573–74 (1973)). Thus, federal courts routinely abstain from intervening in state criminal proceedings "under the principle known as comity [because] a federal district court has no power to intervene in the internal procedures of the state courts." *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) (quotation marks omitted). The Supreme Court has made clear that a pending state prosecution ordinarily provides the accused "a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).

DeFreitas complains that the state court, prosecution, and defense counsel have, *inter alia*, deprived him of his right to receive a speedy trial. (*See* Am. Compl. at 27.) While a federal constitutional claim seeking to address the present denial of speedy trial rights in a state criminal prosecution may overcome *Younger*'s bar when the claim does not seek dismissal of the state criminal charges, such a claim is properly brought as a habeas petition pursuant to 28 U.S.C. § 2241 and must first be properly exhausted within the New York state courts. *See Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 490–92 (1973) (*habeas* petition could be heard before trial where petitioner sought to be brought speedily to trial and "made no effort to abort a state proceeding, or to disrupt the orderly functioning of state judicial processes"); *see also Burns v. Valhalla,* No. 23-CV-6440 (LTS), 2023 WL 7301394, at *2–4 (S.D.N.Y. Nov. 6, 2023). Further, such a federal constitutional claim must be brought "to federal court, not in an effort to forestall a state prosecution, but to enforce the [state]'s obligation to provide him with a state court forum." *Braden*, 410 U.S. at 491; *see also Burns*, 2023 WL 7301394, at *3–4.

DeFreitas does not allege any facts suggesting that he has presented his speedy trial claim to the state courts or that he has exhausted this claim. (*See generally* Am. Compl.) Nor does DeFreitas seek to hasten his prosecution; rather, he seeks dismissal of the charges against him altogether. (*See* Am. Compl. at 27, 54.) In this situation, the *Middelesex* factors weigh strongly in

11

favor of abstention because there is a pending state proceeding implicating New York's important interest in enforcing its criminal laws against the sale and possession of narcotics and unlawful possession of firearms, and there has been no showing that the state proceeding cannot afford an adequate opportunity for judicial review of DeFreitas's speedy trial claim.

Finally, DeFreitas does not plead any facts from which the Court could reasonably find bad faith or harassment in the state criminal prosecution counseling against the application of *Younger* abstention in this action. In order to allege bad faith or harassment, DeFreitas must plead facts that, if true, would show that "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive" and that he "ha[s] no reasonable expectation of obtaining a favorable outcome." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002). A state proceeding that "is legitimate in its purposes, but unconstitutional in its execution—even when violations of constitutional rights are egregious— will not warrant the application of the bad faith exception" to *Younger* abstention. *Id.* (citation omitted). DeFreitas has not pointed to anything in the record suggesting that his state criminal prosecution for charges of selling and possessing narcotics and unlawfully possessing a firearm is motivated by a retaliatory, harassing, or other illegitimate motive, or that he has no reasonable expectation of obtaining a favorable outcome in the state proceedings.

For all of these reasons, this Court may not intervene in the pending state criminal prosecution of DeFreitas. Accordingly, the Court dismisses DeFreitas's claims for injunctive relief without prejudice. *See Lowell*, 835 F. App'x at 639, (noting that "*Younger* abstention *requires* federal courts to abstain from exercising jurisdiction" over the state-level proceedings to which it applies) (emphasis supplied); *Diamond "D" Const. Corp.*, 282 F.3d at 197 ("[W]hen *Younger* applies, abstention is mandatory and its application deprives the federal court of

jurisdiction in the matter." (quoting *Colorado Water Conserv. Dist. v. United States,* 424 U.S.

800, 816 n.22 (1976))); *Player v. Sini*, No. 21-CV-5613(JS)(JMW), 2021 WL 5084172, at *2

(E.D.N.Y. Nov. 1, 2021).

The Court next addresses DeFreitas's remaining Section 1983 claims seeking damages.

*See*, *e.g.*, *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) (claims for monetary damages

should not be dismissed under *Younger* abstention).

## II.     Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. "The reach of the Eleventh Amendment has . . . been interpreted to

extend beyond the terms of its text to bar suits in federal courts against states, by their own

citizens or by foreign sovereigns. . . ." *State Emp's. Bargaining Agent Coal. v. Rowland*, 494

F.3d 71, 95 (2d Cir. 2007) (citation and quotation marks omitted) (alterations in original).

Eleventh Amendment immunity also extends to suits for money damages against state officials

in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A]

suit against a state official in his or her official capacity is not a suit against the official but rather

is a suit against the official's office. As such, it is no different from a suit against the State

itself.") (citation omitted). The doctrine further extends to government entities that are "arms of

the state." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134–35 (2d Cir. 2015). The Second

Circuit has applied two different tests to determine whether government entities are arms of the

state immune from suit under the Eleventh Amendment, and has noted that the choice of which

test to apply is not outcome determinative. *Id.* at 134–35, 137. Both tests generally require

consideration of similar concerns, including the extent to which the state is responsible for paying for any money judgment against the defendant. *See id.* at 137; *Alice Peck Day Mem'l Hosp. v. Samuelson*, No. 2:21-CV-102, 2023 WL 4157434, at \*8–9 (D. Vt. June 23, 2023).[5] Consequently, "[a] suit generally may not be maintained directly . . . against an agency or department of the State" absent a waiver of sovereign immunity. *Fla Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684 (1982); *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

DeFreitas's claims for money damages against numerous state entities and officials are barred by the Eleventh Amendment. First, at the most basic level, DeFreitas's claim against New York State itself is barred by the Eleventh Amendment. *See* U.S. CONST. amend. XI; *Rowland*, 494 F.3d at 95 (Eleventh Amendment bars suits in federal court against states by their own citizens).

Second, DeFreitas's claims against the New York State Police Department, the State of

---

[5] The first arm-of-the-state test recognized by the Second Circuit requires consideration of (1) "the extent to which the state would be responsible for satisfying any judgment that might be entered against the defendant entity", and (2) "the degree of supervision exercised by the state over the defendant entity." *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 82 (2d Cir. 2004) (quotation marks omitted). The second arm-of-the state test requires consideration of six factors:

> (1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state.

*Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 293 (2d Cir. 1996). If the factors from the second test do not lean in a clear direction, a court must consider "the twin reasons for the Eleventh Amendment: (1) protecting the dignity of the state, and (2) preserving the state treasury." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 240 (2d Cir. 2006) (citing *Mancuso*, 86 F.3d at 293). If consideration of these two reasons does not clarify the determination, the Court then focuses on "whether a judgment against the governmental entity would be paid out of the state treasury . . . ." *Id.* at 241.

New York Citizen's Policy and Complaint Review Council, and the State of New York

Grievance Committee for the Tenth Judicial District are barred by the Eleventh Amendment as

departments or agencies of New York State or as entities properly considered arms of the state.

*See Fla Dep't of State*, 458 U.S. at 684 (recognizing Eleventh Amendment bar to claims against

state departments and agencies); *Weather v. New York State Police*, No. 619CV400GTSATB,

2019 WL 7602170, at *4 (N.D.N.Y. Aug. 14, 2019), *report and recommendation adopted*, No.

619CV0400GTSATB, 2019 WL 5387448 (N.D.N.Y. Oct. 22, 2019) (finding that the NYSPD "is

an arm of the state and may not be sued" for money damages); *Pagan v. Corr. Med. Servs.*, No.

11-CV-1357 ER, 2012 WL 2036041, at *5–6 (S.D.N.Y. June 6, 2012) (reasoning that money

damages claims against the NYCPCRC would be barred by the Eleventh Amendment);

*McKeown v. N.Y. State Comm'n on Jud. Conduct*, 377 F. App'x 121, 123 (2d Cir. 2010)

(affirming that the New York State Grievance Committee, Ninth Judicial District is entitled to

Eleventh Amendment immunity). To the extent the Eleventh Amendment does not apply to these

entities, DeFreitas's claims against them are also dismissed because the entities are not

considered persons for Section 1983 purposes. *See infra* Section VIII.

Third, DeFreitas's claims against numerous officials of entities that are departments or

agencies of New York State or are otherwise properly considered arms of the state, in their

official capacities, are also barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71. This

applies to DeFreitas's claims against: (1) Governor Hochul; (2) New York State Police Officer

Lynch; (3) Commissioner Canty of the State of New York Commission of Correction's Citizen

Policy and Complaint Review Council; (4) the following officials of the New York Grievance

Committee: District Chair Dorian Glover, Chief Attorney Catherine Sheridan, Staff Counsel Ann

Marie Modica-Schaffer, Staff Counsel Christopher Shannon, and Staff Counsel Rachel Merker;

(5) Judge Senft; (6) and the prosecutors involved in bringing and prosecuting state criminal charges against DeFreitas: DA Tierney, ADA Kubitz, and ADA Tisi. *See Darcy v. Lippman*, 356 F. App'x 434, 436–37 (2d Cir. 2009) (holding that the Eleventh Amendment bars "claim[s] for damages against the individual defendants in their official capacities" as state officials); *Tsabbar v. Booth*, 115 F. App'x 513, 514 (2d Cir. 2004) ("claims against the New York State Defendants, challenging the conduct of New York State judges, are barred by either the Eleventh Amendment to the United States Constitution or the doctrine of judicial immunity, or both."); *Torres v. Spota*, No. 19CV00296JMAGRB, 2019 WL 3035522, at *3 n.4 (E.D.N.Y. July 10, 2019) (holding that when a district attorney decides whether to prosecute, that person is representing the State and is entitled to invoke Eleventh Amendment immunity (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993))).

For the foregoing reasons, DeFreitas's Section 1983 claims against NYS, the NYSPD, the NYCPCRC, the NY Grievance Committee, as well as DA Tierney, ADA Kubitz, ADA Tisi, Judge Senft, Gov. Hochul, Commissioner Canty, Glover, Sheridan, Modica-Schaffer, Shannon, and Merker in their official capacities are barred by the Eleventh Amendment are thus dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (*per curiam*) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.") (citation and quotation marks omitted).

### III.    Judicial Immunity

"[J]udges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). The Supreme Court instructs that this immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted). This immunity from money

damages claims applies to state court judges who are sued in federal court pursuant to 42 U.S.C. § 1983 for action taken in the judge's judicial capacity. *See Sundwall v. Leuba*, 28 F. App'x 11, *12–13 (2d Cir. 2001) (summary order). The 1996 Congressional amendments to Section 1983 also bar claims for injunctive relief against judges for actions taken in their judicial capacity, providing that "'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" *Montero*, 171 F.3d at 761 (quoting Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, § 309(c), 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983)). Therefore, a judge is immune from claims for money damages or injunctive relief unless the challenged conduct was taken beyond the judge's judicial capacity, or "'in the complete absence of all jurisdiction.'" *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (quoting *Mireles*, 502 U.S. at 11).

Here, DeFreitas appears to challenge rulings made by Judge Senft during the underlying state court criminal prosecution. (*See* Am. Compl. 16, 20–21.) DeFreitas also appears to allege that the Judge Senft set excessive bail. (*Id.* at 21.) As is readily apparent, the challenged rulings were made within Judge Senft's judicial capacity, and DeFreitas has not alleged any facts from which this Court could reasonably find that Judge Senft acted beyond his judicial capacity or in the complete absence of all jurisdiction. (*See generally* Am. Compl.) As such, Judge Senft is entitled to absolute judicial immunity. *See Sundwall*, 28 F. App'x at *12–13. Further, DeFreitas's excessive bail claims are also barred by absolute judicial immunity because the setting of bail is a judicial function that is entitled to absolute immunity. *See Franklin v. Warren Cty. D.A.'s* Office, No. 1:08CV801(GLS/RFT), 2009 WL 161314, at *5 (N.D.N.Y. Jan. 21, 2009) (absolute judicial immunity barred excessive bail claim against judge because "[j]udges enjoy absolute

17

immunity from personal liability for acts committed within their judicial jurisdiction" (citing *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994))). Since absolute "judicial immunity is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, DeFreitas's Section 1983 claims against Judge Senft are not plausible and are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

## IV.    Prosecutorial Immunity

Prosecutors have absolute immunity from civil suits for acts committed within the scope of their official duties where the challenged activities are not investigative in nature, but rather are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013). The actions for which a prosecutor is entitled to absolute immunity "include deciding whether to bring charges and presenting a case to a grand jury or a court." *Simon*, 727 F.3d at 171; *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005). In addition, prosecutors have absolute immunity from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 70–72 (2d Cir. 2019) (holding that prosecutors' direction as to where a criminal defendant would be arraigned was in preparation for a court proceeding in which the prosecutors were acting as advocates, and ADAs were therefore shielded by absolute immunity (citing, *inter alia*, *Goldstein*, 555 U.S. at 344)).

Here, DeFreitas challenges the prosecutors' decisions to charge him and to disregard his

request to be present and to testify at the original grand jury. (Am Compl. at 16.)[6] DeFreitas also complains generally about the prosecution's discovery production. (*Id.* at 17.) The decision to bring and pursue such charges fall squarely within the scope of the judicial phase of the criminal process for which the prosecutors have absolute immunity from suit.

Accordingly, even if DeFreitas had alleged a plausible malicious prosecution claim, *see infra* at 25–26, DA Tierney, ADA Kubitz and ADA Tisi are shielded from suit by absolute prosecutorial immunity. Moreover, it is well-established that "there is no federal constitutional right to testify before a grand jury, nor, for that matter, is there even a federal right to a grand jury in state criminal proceedings." *United States v. Mandujano*, 425 U.S. 564, 571–72 (1976); *see also Franklin*, 2009 WL 161314, at *2. Accordingly, these claims are frivolous and thus are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). *See Collazo v. Pagano*, 656 F.3d 131, 134 n.2 (2d Cir. 2011) (holding that claim against prosecutor is frivolous if it arises from conduct that is "intimately associated with the judicial phase of the criminal process").

## V.     Individual Capacity Claims

DeFreitas's November 7, 2023 letter states that his claims are brought against the named Defendants "in their individual capacities." (ECF No. 7.) DeFreitas's allegations suggest that he seeks to impose liability upon the individual Defendants—Judge Senft, DA Tierney, ADA Kubitz, ADA Tisi, Gov. Hochul, P.O. Lynch, Commissioner Canty, and the following officials of the NY Grievance Committee: District Chair Dorian Glover, Chief Attorney Catherine Sheridan, Staff Counsel Ann Marie Modica-Schaffer, Staff Counsel Christopher Shannon, and Staff Counsel Rachel Merker—for actions taken in their official capacity as a state judge,

---

[6] The Amended Complaint does not specify which prosecutor made the decision to charge DeFreitas or disregard his request to be present and testify at the grand jury. (*See* Am Compl. at 16–17.)

prosecutors, a state police officer, a member of the NY Commission of Correction's Citizen's

Policy and Complaint Review Council, and members of the NY Grievance Committee in the

state criminal proceeding against him on charges for unlawfully selling and possessing narcotics

and unlawfully possessing firearms.[7]  DeFreitas's claims against each of these Defendants are

barred by judicial immunity, prosecutorial immunity, or Eleventh Amendment sovereign

immunity as discussed above. To the extent that DeFreitas seeks to bring claims against these

Defendants for actions taken in their individual capacity, the Amended Complaint fails to allege

any plausible basis for individual liability against any of these Defendants. Consequently, any

such claims against these specific Defendants are dismissed pursuant to 28 U.S.C.

§§ 1915(e)(2)(B), 1915A(b).

## VI.    State Action

DeFreitas also brings Section 1983 claims against the defense attorneys alleged to have

been appointed by the state court to represent him in the underlying criminal prosecution.

Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" *Hooda*

*v. Brookhaven Nat'l Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v.*

*Kohn*, 457 U.S. 830, 837 (1982)). Accordingly, "a litigant claiming that his constitutional rights

have been violated must first establish that the challenged conduct constitutes state action."

*Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (quotation marks and

citation omitted); *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) ("A plaintiff pressing a

---

[7]  The Court makes this assumption based on DeFreitas's subsequent filing (ECF No. 12), even though he
does not mention anywhere in the body of the Amended Complaint Gov. Hochul, P.O. Lynch,
Commissioner Canty, or the following officials of the NY Grievance Committee: District Chair Dorian
Glover, Chief Attorney Catherine Sheridan, Staff Counsel Ann Marie Modica-Schaffer, Staff Counsel
Christopher Shannon, and Staff Counsel Rachel Merker. (*See* Am. Compl. at 15, 17–22, 54 (discussing
state criminal proceedings against DeFreitas).)

claim of violation of his constitutional rights under § 1983 is [ ] required to show state action.")
(quotation marks and citation omitted). Indeed, "the under-color-of-state-law element of § 1983
excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am.
Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citation omitted).

Here, insofar as DeFreitas brings claims under Section 1983 for alleged violations of his
constitutional rights against his defense attorneys, Rothman and Fitzgerald, such claims are not
plausible because these Defendants are not state actors. Attorneys, whether court-appointed or
privately retained, are generally not state actors for purposes of Section 1983. *See*, *e.g.*, *Polk
County v. Dodson*, 454 U.S. 312, 325 (1981) ("With respect to [ ] § 1983 claims . . . a public
defender does not act under color of state law when performing a lawyer's traditional functions
as counsel to a defendant in a criminal proceeding."); *see also Rodriguez v. Weprin*, 116 F.3d 62,
65–66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a
lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act
'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.").

A private actor may, however, be considered as acting under the color of state law for
purposes of Section 1983 if the private actor was a "'willful participant in joint activity with the
State or its agents.'" *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting
*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Section 1983 liability may also extend
to a private party who conspires with a state actor to violate a plaintiff's constitutional rights. *See
Ciambriello*, 292 F.3d at 323–24. In order to state a Section 1983 conspiracy claim, a plaintiff
must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to
inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing
damages." *Id.* at 324–25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).

21

Indeed, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id*. at 324 (quotation marks omitted).

As is readily apparent, DeFreitas has not sufficiently alleged that Rothman or Fitzgerald acted jointly with a state actor or conspired with a state actor to deprive him of some constitutional right. (*See* Am. Compl, *in toto*.) Thus, in the absence of any state action, DeFreitas's Section 1983 claims against Rothman and Fitzgerald are not plausible as a matter of law. *See Ciambriello*, 292 F.3d at 325. Hence, DeFreitas's Section 1983 claims against Rothman and Fitzgerald are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

## VII.   Personal Involvement and Supervisory Liability

Although DeFreitas seeks to impose Section 1983 liability upon Sheriff Toulon, the Warden, County Exec. Bellone, Gov. Hochul, Glover, Sheridan, Modica-Schaffer, Shannon, Merker, and Canty, his scant allegations are insufficient to support plausible claims. As the Second Circuit has made clear, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

DeFreitas has not alleged any conduct or inaction attributable to any of these individuals and it appears that DeFreitas has brought Section 1983 claims against them solely due to the supervisory positions they hold. Indeed, apart from the list of Defendants, DeFreitas has not mentioned any of these Defendants in the body of the Amended Complaint. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 06-CV-0889, 2007 WL

22

607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. Jul. 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at *2 (S.D.N.Y. Mar. 16, 1998) (dismissing claims asserted against the defendant-superintendent because the complaint "mention[ed him] only in the caption, and fail[ed] to allege any act or omission by [him]"). Thus, DeFreitas's Section 1983 claims against Sheriff Toulon, the Warden, County Exec. Bellone, Gov. Hochul, Glover, Sheridan, Modica-Schaffer, Shannon, Merker, and Commissioner Canty in their individual capacities are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

Further, DeFreitas has named P.O. Siviglia, P.O. Cracco, P.O. Scalzo, P.O. McLaughlin, P.O. Gambino, P.O. Roe, P.O. Lynch, and P.O. Bosco as Defendants. There are no allegations about any of these Defendants, however, in the body of the Amended Complaint. (*See* Am. Compl., ECF No. 7, *in toto*.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)).

Here, DeFreitas has not included factual allegations of conduct or inaction attributable to any of these police officers. The failure to allege any facts demonstrating these Defendants' personal involvement is fatal to DeFreitas's Section 1983 claims against them. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (holding that a plaintiff proceeding under Section 1983 must allege facts showing the defendants' personal involvement

in the alleged constitutional deprivation); *Avant v. Miranda*, No. 21-CV-0974(JS)(SIL), 2021

WL 1979077, at *4 (E.D.N.Y. May 18, 2021) (dismissing Section 1983 claims against individual

police officers for failure to allege their personal involvement in the challenged conduct).

Accordingly, DeFreitas's Section 1983 claims against P.O. Siviglia, P.O. Cracco, P.O. Scalzo,

P.O. McLaughlin, P.O. Gambino, P.O. Roe, P.O. Lynch, and P.O. Bosco are not plausible and

are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b).

### VIII.   Persons Under Section 1983

DeFreitas's Section 1983 claims against the SCDAO, the SCSO, the SCPD, NYS, the

NYSPD, NYCPCRC, and the NY Grievance Committee must also be dismissed.[8]  Section 1983

provides that an action may be maintained against a "person" who has deprived another of rights

under the "Constitution and laws." 42 U.S.C. § 1983. None of these entities are "persons" within

the meaning of Section 1983. *See Will*, 491 U.S. at 71 (state is not a "person" for the purpose of

Section 1983 claims); *Curtis v. Rockland Cnty. Drug Task Force*, No. 21-CV-4294 (PMH), 2021

WL 2418466, at *1 (S.D.N.Y. June 14, 2021) (dismissing claims against "Rockland County

Drug Task force" and "Rockland County Office of the Sheriff Department, [. . .] because neither

a task force nor a sheriff's department qualify as a 'person' within the meaning of § 1983");

*Hester-Bey v. Police Dep't*, No. 12-CV-3320 KAM, 2012 WL 4447383, at *1 (E.D.N.Y. Sept.

24, 2012) (explaining that "Section 1983 provides that an action may only be maintained against

a 'person' who has deprived another of rights under the 'Constitution and Laws,'" and holding

that, because "[t]he New York City Police Department is not a 'person' within the meaning of

section 1983 [it] is therefore[ ] not a suable entity" (quoting 42 U.S.C. § 1983)); *Whitley v.*

---

[8]  As noted above, DeFreitas's claims against NYS, the NYSPD, NYCPCRC, and the NY Grievance
Committee are also dismissed on the basis of Eleventh Amendment sovereign immunity. *See supra*
Section II.

*Westchester Cnty. Corr. Fac. Admin.*, No. 97CIV 0420 (SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997) (correctional facility or jail not a "person" within the meaning of Section 1983). Therefore, DeFreitas's Section 1983 claims against SCDAO, the SCSO, the SCPD, NYS, the NYSPD, NYCPCRC, and the NY Grievance Committee are not plausible and are thus dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

## IX.    Municipal Liability

Given DeFreitas's *pro se* status and this Court's obligation to liberally construe his pleadings, the Court has considered whether he has alleged a plausible claim when construing his allegations against SCDAO, the SCSO, the SCPD, the NYCPCRC as against the respective municipality, as well as DeFreitas's Section 1983 claims alleged directly against Suffolk County. (*See generally* Am Compl.) For the reasons that follow, DeFreitas has not alleged plausible claims for municipal liability.

In order to prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690–91 (1978)). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" *Roe*, 542 F.3d at 36 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)).

DeFreitas has not alleged any facts from which this Court could reasonably construe that the challenged conduct was undertaken pursuant to a municipal custom, policy or practice. Thus,

25

these claims are implausible, and are dismissed without prejudice pursuant to 28 U.S.C.

§§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

## X.    Malicious Prosecution

Affording the *pro se* Amended Complaint a liberal construction, it appears that DeFreitas

purports to allege malicious prosecution claims against DA Tierney, ADA Kubitz, and ADA

Tisi. (*See generally* Am Compl.) To state a claim for malicious prosecution, a plaintiff must

allege that criminal proceedings were initiated or continued against him, with malice and without

probable cause, and were terminated in his favor. *See Mitchell v. City of New York*, 841 F.3d 72,

79 (2d Cir. 2016); *Thompson v. Clark*, 596 U.S. 36, 39 (2022) (holding that a plaintiff bringing a

malicious prosecution claim needs to show that the criminal prosecution ended with a favorable

termination, such as without a conviction). "Claims of malicious prosecution accrue when the

relevant criminal proceedings terminate in a plaintiff's favor." *Lesane v. Doe 1*, No. 21-CV-

4746, 2021 WL 3173056, at *3–5 (S.D.N.Y. July 26, 2021) (citing *Bumbury v. City of New York*,

62 A.D. 3d 621 (N.Y. App. Div. 1st Dep't 2009)).

Here, DeFreitas's malicious prosecution claims necessarily fail given the on-going

criminal prosecution against him. Indeed, DeFreitas has not—and cannot at this juncture—allege

that the proceedings ended in a manner that affirmatively indicates his innocence. Further, a

conviction would be fatal to his malicious prosecution claim because it would mean that the

proceedings have not terminated in his favor. DeFreitas's malicious prosecution claims are thus

premature, at best. The Court therefore dismisses without prejudice DeFreitas's malicious

prosecution claims with leave to replead within two (2) weeks of the conclusion of the

underlying, pending state criminal proceeding, if so warranted at that time.

## XI.    Stay Pending Resolution of Criminal Case

The Court next addresses DeFreitas's false arrest claims. A claim for false arrest under

Section 1983 looks to state law as a starting point to determine the elements of a claim for false arrest. *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 378 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.'"); *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

To establish a false arrest claim under New York law, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (quotation marks omitted). Further, "[a]n arrest is privileged as a matter of law if the individual claiming false arrest is convicted of the crime for which he or she was arrested." *Icangelo v. Doe*, No. 13-CV-1638, 2013 WL 1455313, at *2 (E.D.N.Y. Apr. 2, 2013) (citation omitted); *see also Sanchez v. Miller*, No. 20-CV-0620, 2020 WL 1140843, at *6 (S.D.N.Y. Mar. 6, 2020) ("[A] civil rights plaintiff cannot pursue claims that would necessarily be inconsistent with a conviction.") (citation omitted).

Here, given that the charges stemming from the challenged arrest are pending, DeFreitas's "false arrest claim is premature." *Hall v. Salaway*, No. 20-CV-4651, 2021 WL 826169, at *4 (E.D.N.Y. Mar. 3, 2021). Because DeFreitas's state criminal case is ongoing, as noted above, together with the fact that a false arrest claim accrues at the time of commencement of legal process, adjudication of these claims is stayed pending the conclusion of the underlying criminal proceeding. *Wallace v. Kato*, 549 U.S. 384, 393–94, 397 (2007) ("If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that

27

will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.") (citations omitted); *Stegemann v. Rensselaer Cty. Sheriff's Office*, 648 F. App'x 73, 78 (2d Cir. 2016) (noting where, as here, the "underlying criminal action is ongoing, the better course might be for the District Court to hold [the plaintiff's] civil action in abeyance until a judgment of conviction has been entered in [the underlying] criminal case"); *see also Hall*, 2021 WL 826169, at *6 (collecting cases).

Given the stay, DeFreitas shall request, in writing, that the stay be lifted within two (2) weeks after the conclusion of his state court criminal proceeding, if so warranted at that time.

## XII.    Leave to Further Amend the Complaint

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in DeFreitas's claims seeking this Court's intervention in the pending state criminal prosecution cannot presently be cured by amendment, the Court declines to grant leave to amend these claims at this time. Should DeFreitas properly exhaust his speedy trial claims, however, he may seek leave to further amend the operative complaint at that time.

Similarly, further amendment of DeFreitas's claims against NYS, the NYSPD, the NYCPCRC, the NY Grievance Committee, DA Tierney, ADA Kubitz, ADA Tisi, Judge Senft, Gov. Hochul, P.O. Lynch, Commissioner Canty, Glover, Sherida, Modica-Schaffer, Shannon, Merker, Rothman and Fitzgerald would be futile for the reasons set forth above. Thus, the Court denies leave to amend these claims.

Further, in light of DeFreitas's ongoing criminal prosecution, the Court stays amendment of any claims surrounding his arrest and dismisses the malicious prosecution claim. Rather, the

Court grants DeFreitas leave to file an amendment to the operative complaint upon resolution of the underlying criminal case to pursue the false arrest claim and to replead the malicious prosecution claim, if so warranted at that time. DeFreitas shall seek leave to lift the stay of the false arrest claim and/or to replead the malicious prosecution claim within two (2) weeks of the conclusion of the underlying state criminal proceedings.

The Court finds that it would not be futile to permit amendment now with regard only to DeFreitas's claims concerning the conditions of his confinement. Accordingly, DeFreitas is granted leave to file a Second Amended Complaint within thirty (30) days from the date of this Order against a proper defendant relating to the alleged deliberate indifference to his medical needs. *Cruz v. Gomez*, 202 F.3d 593, 596–98 (2d Cir. 2000) (*pro se* plaintiffs should be afforded an opportunity to amend complaint prior to dismissal). To be clear, DeFreitas shall name as defendants, to the best of his ability, the individuals personally involved in the challenged conduct or inaction concerning his neck, back, and foot issues. *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (stating that plaintiff must show deliberate indifference on the part of a "particular defendant"). While pleading these facts, DeFreitas should specify what each individual defendant did or failed to do. The Court reminds DeFreitas that it is important to link the defendants named in the caption to the events described in the body of any Second Amended Complaint. If DeFreitas does not presently know the identity of any such individual, he shall name them as a "John Doe" or "Jane Doe" and describe such individuals including the date, time, and location of the alleged constitutional violation in which each John or Jane Doe defendant was involved.

Any Second Amended Complaint shall be clearly titled "Second Amended Complaint," bear docket number 23-5933(NJC)(AYS), and contain a short and plain statement of DeFreitas's deliberate indifference claim against each individual or entity named as a defendant. If DeFreitas

does not timely file a Second Amended Complaint, absent a showing of good cause, the Court shall administratively close this case with leave to re-open upon conclusion of the underlying state court criminal proceedings.

## CONCLUSION

For the reasons stated above, the Court grants DeFreitas's applications to proceed *in forma pauperis*, IFP Mot., ECF Nos. 2, 8, and grants his Motion to Amend the Amended Complaint, Mot. to Amend, ECF No. 9. Additionally, for the reasons stated above, this Court dismisses the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) as follows: (1) the injunctive relief claims seeking this Court's intervention in the pending state criminal prosecution are dismissed without prejudice and without leave to amend at this time; (2) the Section 1983 claims against SCDAO, the SCSO, the SCPD, NYS, the NYSPD, NYCPCRC, and the NY Grievance Committee are dismissed with prejudice; (3) any other claims against NYS, the NYSPD, NYCPCRC, and the NY Grievance Committee that can be construed upon a liberal reading of the Amended Complaint are dismissed without prejudice and with leave to pursue any valid claims in state court; (4) the claims against Gov. Hochul, Commissioner Canty, Glover, Sheridan, Modica-Schaffer, Shannon, and Merker are dismissed without prejudice and with leave to pursue any valid claims in state court; (5) the money damages claims against DA Tierney, ADA Kubitz, ADA Tisi, Judge Senft, Rothman, and Fitzgerald are dismissed with prejudice; and (6) the claims against Sheriff Toulon, the Warden, P.O. Siviglia, P.O. Cracco, P.O. Scalzo, P.O. McLaughlin, P.O. Gambino, P.O. Roe, and P.O. Bosco are dismissed without prejudice. In light of DeFreitas's on-going criminal prosecution, the amendment of any claim surrounding his arrest

is stayed at this time and the malicious prosecution claim is dismissed without prejudice.[9]

DeFreitas is granted leave to file a Second Amended Complaint within thirty (30) days from the date of this Order against a proper defendant relating to the alleged deliberate indifference to his medical needs. If DeFreitas does not presently know the identity of any such individual, he shall name him or her as a "John Doe" or "Jane Doe" and describe such individuals including the date, time, and location of the alleged constitutional violation in which each John or Jane Doe defendant was involved.

Any amended complaint shall be clearly titled "Second Amended Complaint," bear docket number 23-5933(NJC)(AYS), and contain a short and plain statement of DeFreitas's deliberate indifference claim against each individual or entity named as a defendant. If DeFreitas does not timely file a Second Amended Complaint, absent a showing of good cause, the Court shall administratively close this case with leave to reopen upon conclusion of the underlying state court criminal proceedings.

Given the dismissal of the Amended Complaint, DeFreitas's remaining motions (ECF Nos. 12, 16) are denied as moot.

The Clerk of the Court shall mail a copy of this Order to DeFreitas at his address of record, include the notation "Legal Mail" on the envelope, and note such mailing on the docket.

---

[9] As set forth above (*see supra* at 26–28), DeFreitas is granted leave to file an amended complaint to pursue any claims relating to his arrest and prosecution upon resolution of the underlying criminal case if so warranted at that time. DeFreitas shall seek leave to lift the stay as to the false arrest claim and/or to replead the malicious prosecution claim within two (2) weeks of the conclusion of those proceedings.

31

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).


Dated: Central Islip, New York

January 26, 2024


        */s Nusrat J. Choudhury*        
NUSRAT J. CHOUDHURY
United States District Judge